## AMERICAN CENTRAL INS. CO. v. BUCHANAN–VAUGHAN AUTO CO. (No. 2794.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 1, 1923. Rehearing Denied Dec. 6, 1923.)

1. Insurance ☞665(3)—Evidence held to show no fraud of insured in representing proper storage of destroyed cars.

Evidence that the managing officer of an automobile company did not read the policy before signing it, that he did not know what place was named as the usual storage location of the insured automobiles, that he told the agent all about his stock and where it was kept, that he paid whatever rate of premiums was charged without knowing the proper one, justified the conclusion that insured perpetrated no fraud and did not collude with insurer's agent in representing that the cars were stored in the usual place of storage, though some were stored in a town 115 miles away to the agent's knowledge.

2. Appeal and error ☞1010(1)—Judgment for insured on sufficient evidence held to settle question of agent's authority.

Where the authority of an insurance agent to write insurance in another state was contested, a judgment for insured on his fire policy, based on sufficient evidence of such authority, settled the issue.

3. Insurance ☞88—Powers of insurance agent held to make him a general agent.

Local insurance agents with power to execute and deliver policies without insurer's approval and collect premiums, and who were expected to know the correct rates and give them in making insurance contracts, were general agents.

4. Insurance ☞141(1)—General agents are authorized to waive irregularities sufficient to invalidate policy.

General agents may bind their principals in waiving irregularities which are sufficient to invalidate the insurance contract at its incipiency.

5. Insurance ☞280 — After destruction of insured automobiles, policy not declared void because of mistake as to place of storage.

After destruction of insured automobiles, it is too late to declare a policy void for mistake in stating the place where they were stored, since insured would thereby lose the benefit of taking out other insurance.

6. Insurance ☞668(6)—Insured not conclusively guilty of fraud because of incorrect statement in policy as to place of storage of goods.

While in suits to enforce contracts a party thereto will not ordinarily be permitted to say that he did not know the contents of the instrument which he had signed or accepted, misstatement in fire policy as to place of storage of goods is not conclusive that insured knew of it and was guilty of fraud which would avoid the policy.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Insurance ⬳646(2)—Burden of proving insured violated clause, as to place of storage of goods is on defendant insurer.**

In an action on a fire policy containing a clause requiring that the insured property be stored in the usual storage location, the burden of proving that insured stored his cars elsewhere was on defendant.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by the Buchanan-Vaughan Auto Company against the American Central Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Robertson, Senter & Westerfeld, of Dallas, for appellant.

A. L. Burford, of Texarkana, for appellee.

HODGES, J. This appeal is from a judgment for the sum of $4,712 against the appellant for the value of six automobiles destroyed by fire. It is undisputed that the automobiles described in the insurance contract were burned while in a garage at El Dorado, Ark. The payment of the loss is resisted upon the ground that a misrepresentation was made as to the place where the cars were usually kept in storage.

[1] The facts show that the appellee is a private corporation, and at the time the policy was issued was engaged in selling new and secondhand automobiles. Its principal place of business, where most of its cars were stored, was a garage at 322 Pine street, Texarkana, Tex. Appellee also had a branch office and place of business, where some of its cars were stored, at El Dorado, Ark., the place where the fire occurred which caused the loss. The policy sued on is what is called a "dealer's open policy," and insured the appellee against direct loss or damage by fire while the property covered was within the limits of the United States and Canada and in any of the buildings or on the road or in railroad cars or other conveyances. The rate of insurance on the automobiles was $1.55 per hundred, based upon the usual storage location, which was stated at 322 Pine street, Texarkana, Tex. The policy further provided that—

The insurance on each automobile "shall be evidenced by proper entries in a passbook provided for the purpose, or a certificate issued thereunder; and such entries or certificate to state the storage location of the automobiles covered by the policy."

The policy itself did not describe any property or state its insured value. These detailed stipulations are found in the certificates issued describing the cars then in stock, and other certificates issued as other cars were added to the stock thereafter. The following is a sample certificate:

"American Central Insurance Company, 810 Olive St., St. Louis, Mo. Open Policy, No. 80139,. Certificate No. 35104. Automobile Certificate (for Assured).

"Date of Attachment Feb. 22, 1922.

"This certifies, that Buchanan-Vaughan Auto Company is insured under the terms of above open policy to the amount of eleven hundred fifty and no/100 dollars, on automobile (factory) No. 533170. Name Studebaker. Type (touring, roadster, etc.) touring. Year-model 1922. List price $1,473.00. Cost to assured $1,509.04. New or sec.-hand, new. If secondhand give date of purchase by dealer. Usual storage location 322 Pine St., Texarkana. Contents fire rate of building in which car is stored $1.55. (To include theft, add 25¢ to fire rate.) Loss, if any, payable to no exceptions. This certificate expires May 22. 1922. Premium, $———.

"B. G. Chapman, Jr., President.

"Harold M. Hess, Secretary.

"Not valid unless countersigned by the duly authorized agent of this company at Texarkana, Texas, 1526.

"F. W. Offenhauser & Co., Agent."

The certificates were to be attached to the policy and become a part of the insurance contract. Each car in the stock covered by these certificates was described in daily reports made from time to time by Offenhauser & Co., appellant's local agents at Texarkana, to its state agents at Houston, Tex. These reports contained the statement that the usual storage location of the cars described was at 322 Pine street, Texarkana. This was done although some of the cars described were at the time at El Dorado, Ark. Two of the cars destroyed by fire had never been in Texarkana, but the others had been carried from Texarkana to El Dorado, and were kept at that place temporarily, it is claimed, for sale. El Dorado is about 115 miles from Texarkana, and it was the custom of the appellee to carry cars back and forth between those two places. About 90 per cent. of its stock was kept at Texarkana.

It is conceded that appellant's agents, Offenhauser & Co., knew of these two different locations in appellee's business operations. They also knew that some of the cars which were described in the certificates issued were at the time probably in El Dorado. No misrepresentations were made by the insured, nor were any material facts concealed from appellant's agents, Offenhauser & Co. The evidence justifies the conclusion that there was no fraud perpetrated by the insured, nor was there any collusion between its agents and Offenhauser & Co. According to the appellee's evidence, its managing officer, who contracted for the insurance, did not read the policy in full or examine the certificates at the time they were delivered to him. He did not know what place was named as the usual storage

location. He told appellant's agents all about his stock and where it was kept, and that he wanted it covered by an insurance policy. He did not stipulate for any particular rate, and did not know what rate was proper or what was charged. He paid whatever bill was presented.

[2-5] In passing upon the facts the trial court had a right to conclude that appellee gave the local agents of the appellant a fair and full statement of all the material facts required to prepare the policy and to fix the premium to be paid, and, that appellee's agent did not know of any irregularity or error in the face of the policy or certificates till after the fire. If there was any mistake in stating the usual place of storage as at Texarkana, it was one for which appellant's agents alone were responsible. The evidence shows that the rate for El Dorado was much higher than the rate for Texarkana on the same class of insurance. While it is shown that appellant wrote auto insurance on cars situated in Arkansas, there is some dispute concerning the authority of Offenhauser & Co. to represent appellant in that state. There was sufficient testimony to enable the court to conclude that they did have such authority, and had the right to issue policies on cars stored at El Dorado. Whatever conflict there may be upon that issue was settled by the judgment of the trial court in favor of the appellee. On that state of the evidence the question is: Was the appellee entitled to recover? Offenhauser & Co. were appellant's agents, with power to execute and deliver policies of insurance and to collect the premiums. Policies issued by them became effective upon delivery and did not have to be submitted to and approved by other agents in order to be binding. While Offenhauser & Co. were not authorized to fix rates, they were expected to know the correct rates and to give them in making their contracts of insurance. After furnishing the correct data for making a valid insurance contract, the insured in this instance had a right to rely upon appellant's agents to charge the correct rate and to issue a valid insurance policy. Such representatives as Offenhauser & Co. are said to be general agents. Wagner v. Ins. Co., 92 Tex. 549, 50 S. W. 569; 1 Cooley's Briefs on Insurance, pp. 346, 347; 6 Cooley's Briefs on Ins. (Sup.) 74. They may bind the principal in waiving irregularities which are sufficient to invalidate the insurance contract at its incipiency. 3 Cooley's Briefs on Ins. pp. 2620–2623 and 3652, 3653. It has also been held that a misrepresentation or warranty of a fact existing at the date of the policy is waived by the company if its agent knew the real facts at the time. Ins. Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915; Fire Ass'n of Philadelphia v. Bynum (Tex. Civ. App.) 44 S. W. 579. If Offenhauser & Co.

had the right to issue policies of insurance on cars stored at El Dorado, Ark., then the only loss which the appellant sustained by the failure to state that as the usual place of storage of some of the cars is the difference in the El Dorado rate and the Texarkana rate. Both the appellee and appellant's agents, Offenhauser & Co., may still be held responsible for that difference on the ground of such mistake. There is no evidence tending to show that the appellant would not have issued the policy on the cars at El Dorado had such information been given to its general officers. If this policy is to be held void because of the error claimed, then the insured loses the benefit of insurance which it might have contracted for had this policy not been issued, or had it been canceled after issuance and before the loss. It is now too late to correct the error and enable the insured to secure protection against fire.

[6] Appellant insists that the testimony shows as a matter of law that there was collusion between the appellee and appellant's agents, Offenhauser & Co. It is insisted that appellee must have known of the misstatement as to the usual place of storage; that this was clearly written in the policy and the certificates issued. It is true that a party to a written contract will not, under ordinary circumstances, be permitted to say that he did not know the contents of the instrument which he had signed, or had accepted. That rule, however, is applied in suits to enforce the obligations which the contract imposes; but it should not be invoked as conclusive evidence of notice to prove actual fraud. In cases of fraud the intent of the parties is a material element, and where actual ignorance of a misrepresentation exists there is no basis for the inference of fraud in permitting an error to go uncorrected.

[7] The liability of the appellant has been discussed, so far, upon the assumption that an error was made in stating that the usual place of storage of all of the cars covered by the policy and certificates was at Texarkana. The burden of proving that 322 Pine street, Texarkana, was not the usual place of storage devolved upon the appellant. It is doubtful if that has been so conclusively established as to require a finding to that effect. Appellee's principal witness, who negotiated the insurance, testified that their garage in Texarkana was the usual place of storage, that cars were carried back and forth at frequent intervals, but that nearly all of the stock was kept at Texarkana. It is by no means certain that the court could not have based his judgment in favor of the appellee upon the truth of that statement.

We therefore conclude that the judgment should be affirmed.

## On Motion for a Rehearing.

While the correctness of our findings of fact made in this case is assailed in the motion for a rehearing, we have discovered no occasion to change them.

Appellant now urges for the first time the argument that to hold the policy sued on a valid and enforceable contract is to ignore the ratings made by the Commission of Fire Insurance in this state. It is contended, in substance, that fire insurance companies now have no authority to fix rates different from those prescribed by the Commission. The record contains no evidence of what rate had been fixed for automobile insurance by the Commission in this instance. The policy sued on was for insurance against both fire and theft, and presumably did not carry the same legal rating that would be fixed for fire insurance alone. By provisions of article 4876a of the Vernon's Sayles' Revised Civil Statutes 1914, the Commission fixes only the maximum rates to be charged for fire insurance. The statute permits the companies in writing fire insurance to charge less than the rate fixed by the Commission if they wish to do so.

The motion is overruled.