TRADERS & GENERAL INSURANCE COMPANY, Appellant,

v.

W. I. LUCAS et al., Appellees.

No. 12826.

Court of Civil Appeals of Texas.

Galveston.

June 28, 1955.

Rehearing Denied July 21, 1955.

Butler, Binion, Rice & Cook, Frank J. Knapp, and John L. McConn, Jr., Houston, for appellant.

Spiner, Pritchard & Thompson, Clark G. Thompson, and Richard E. Neill, Houston, for appellees.

HAMBLEN, Jr., Chief Justice.

This suit was filed in the District Court of Harris County by appellees, W. I. Lucas and D. J. Carter, seeking recovery under a Texas Standard Automobile Liability Insurance Policy issued by appellant, covering the operation of a 1949 Ford automobile. Appellees, C. O. Broussard and wife, intervened individually and on behalf of their minor children, praying that appellant be required to satisfy a judgment previously recovered by such intervenors against appellee Carter. Trial was before the court without a jury, and resulted in a judgment favorable to appellees Broussard in the amount of the judgment previously recovered by them against appellee Carter, and in favor of appellees Carter and Lucas for attorneys' fees incurred by them.

The facts giving rise to the litigation are substantially undisputed, and are as follows: In February, 1953, appellee Carter, who was then 19 years of age, desired to purchase a 1949 Ford automobile. Being unable, because of his minority, to finance such purchase, he arranged with his brother-in-law, Lucas, to take title to the vehicle in Lucas' name, and to sign the deferred payment notes and chattel mortgage thereon, it being understood, as a part of the arrangement, that Carter would make all payments for the purchase of said automobile, and would have possession of, maintain and use the same as his own. After the consummation of such arrangement, Carter, upon the suggestion of Lucas, desired to secure insurance against liability for personal injury and property damage which might be incurred as a result of the operation of such vehicle. He made application by telephone to J. B. Ross & Company, a recording agent of appellant, to whom he had been referred by the seller of the automobile. It is undisputed that in the several telephone conversations between appellee Carter and J. B. Ross & Company, all of the facts relative to the manner in which the Ford automobile was purchased, the status of the legal title, Carter's age, and his possession, use and en-

joyment of the automobile, were fully and completely divulged, his expressed purpose being to secure protection for himself against the stated risks. As a result of such application, J. B. Ross & Company, as agent for appellant, issued a Texas Standard Automobile Liability Insurance Policy, describing the 1949 Ford automobile, and naming W. I. Lucas as the insured. J. B. Ross & Company stated to Carter that it was necessary to designate Lucas as the insured because the legal title to the vehicle was in Lucas's name.

On June 21, 1953, appellee Carter, while driving said insured automobile, was involved in a collision with a vehicle in which the Broussards were riding. The Broussards sued Carter and Lucas to recover damages for personal injuries, and recovered judgment against Carter alone for the total sum of $9,250, plus interest and court costs. They were denied recovery against Lucas. Carter and Lucas then filed the suit resulting in the judgment here appealed from.

After entry of judgment, the trial court, in response to request therefor by appellant, made findings of fact and conclusions of law. Among such is one to the effect that appellee Carter was insured under the terms of the policy issued in the name of Lucas by virtue of a clause therein which is referred to as the omnibus clause, and which, in so far as here applicable, provides: "* * * the unqualified word 'insured' includes the named insured and also includes any person while using the automobile * * *, provided the actual use of the automobile is by the named insured or with his permission." The trial court also held, as reflected by such findings and conclusions, that appellee Carter was protected by an oral contract of insurance made between Carter and J. B. Ross & Company; that appellant was estopped to deny that D. J. Carter was covered by appellant's policy or had waived its right to make such denial; and that appellant's policy should be reformed to include appellee Carter as a named insured. The asserted error of the trial court in making such findings and conclusions is the basis

of appellant's points of error numbered one to four, inclusive. By its fifth point of error, appellant contends that the policy of insurance sued upon was rendered void by the false statement pertaining to "sole ownership" made in the declarations of the policy.

From our examination of the record here presented, it appears to be conclusively and undisputedly established that at the time this policy of insurance was issued, J. B. Ross & Company was fully advised that Carter was a minor, nineteen years of age; that legal title to the automobile was in the name of Lucas; that the automobile would be used by Carter and garaged at his home; and that all payments for the automobile, as well as the premium for the insurance policy, would be made by Carter. In short, Carter simply related all of the foregoing facts to J. B. Ross & Company, and requested the issuance of a policy of insurance which would protect him against liability which might result from the operation of the automobile. In response to that request, J. B. Ross issued the policy here in dispute. The policy was upon a printed form furnished to J. B. Ross & Company by appellant for use in writing contracts for liability insurance. The spaces upon the printed form, which were blank, were filled in by J. B. Ross & Company after full disclosure by Carter of the facts above set forth. The amount of the premium was determined by J. B. Ross & Company, which company accepted a note for that amount signed by Carter, and which note has been paid. The policy was delivered to Carter with the express representation by J. B. Ross & Company that it would afford to him the protection which he sought, and for which he paid.

It is equally undisputed that J. B. Ross & Company was at all times material a recording agent of appellant as that term is defined by Article 21.14, Sec. 2 of the Insurance Code of the State of Texas, V.A. T.S. In that capacity it was authorized by appellant to, and was, in fact, engaged in the business, on appellant's behalf, of soliciting business, writing, signing, executing and delivering policies of insurance,

binding appellant upon insurance risks, maintaining an office and a record of such business, collecting premiums, and otherwise performing the customary duties of a recording agent representing an insurance carrier in its relation with the public.

■ It is this Court's view that the mere recitation of the foregoing facts compels an affirmance of the judgment of the trial court. In reaching that conclusion, we do not consider it necessary to decide the question as to whether, independently of J. B. Ross & Company's knowledge of the true facts, Carter would be protected under the so-called "omnibus" clause of the policy, the material portions of which have been quoted. Appellant relies principally upon the case of Didlake v. Standard Insurance Company, 10 Cir., 195 F.2d 247, 33 A.L.R.2d 941, as authority for the proposition that the owner of a vehicle does not use it with the "permission" of the named insured, as that term is used in the omnibus clause of an automobile liability insurance policy. Examination of that case discloses that it was therein stipulated that the representation of ownership was falsely made to induce the agent to issue the policy. The construction placed by the court upon the omnibus clause was obviously made in the light of the fraud practiced upon the insurance carrier, and is not factually analogous to, nor determinative of the question here involved.

Neither do we consider it essential to the proper determination of this appeal to decide whether appellant's liability rests strictly upon the doctrine of estoppel, waiver, oral contract, or reformation, as variously concluded by the trial court. It is our view that the controlling fact in this case is the knowledge of appellant's agent of the true circumstances of the ownership, possession and use of the automobile involved. We decide the case in the light of that undisputed fact.

■■ This is not a situation wherein an agent has done some illegal act, or has in any way exceeded the authority conferred upon him by his principal. Appellant's own witnesses acknowledged that it wrote liability insurance for the protection of minors. J. B. Ross, whom counsel conceded to be a witness for appellant, stated that he had written liability policies for the protection of minor drivers both before and after the policy here involved was issued. Admittedly, the premium charged was in the amount properly chargeable in situations where a vehicle was to be driven by a person under twenty-five years of age. Admittedly, appellant knew that Lucas, the named insured, was over twenty-five years of age. We think it to be beyond question that J. B. Ross & Company, appellant's recording agent, had full authority from appellant to write the type of coverage which appellee Carter requested, and for which he paid. Whether or not the record supports the trial court's finding that appellant had actual knowledge of Carter's minority, and of his ownership and use of the automobile, is immaterial. Having conferred the authority upon its agent to write the very contract which appellee requested, it cannot avoid liability thereon upon the proposition that its agent failed to inform it of facts which it now contends would have induced it not to accept the risk. Knowledge of an agent is that of his principal. That elementary proposition is stated in 24 Tex.Jur., Sec. 111, p. 815, as follows: "Knowledge acquired by the agent is imputed to the principal in a variety of situations, the general rule, so far as concerns insurance, being that an insurer is charged with knowledge of any pertinent fact affecting a risk acquired by its agent while acting within the scope of his agency, no matter what the source, * * *." We deem it unnecessary to cite further authority for such proposition.

With knowledge, whether actual or imputed, of the true facts here involved, appellant's liability appears to this Court to be beyond question. Some authorities have held the liability to rest upon the terms of the "omnibus clause" of the policy. In discussing this theory, Appleman on Insurance Law & Practice, Vol. 7, Sec. 4358, p. 145, makes the following statement: "There is a sharp conflict of au--

thority where one actually owning the automobile or purchasing it is operating it at the time of the accident and claims protection under the omnibus clause—one line of authority holding that since he has the right legally to use the automobile at will, permission granted to him for such use would be a nullity; the other view holding that he necessarily has permission for such use by reason of his interest and should be protected in the absence of fraud."

Other authorities base liability upon the theory of waiver. Blashfield's Encyclopedia of Automobile Law & Practice, Vol. 6, Sec. 3629, p. 251, states: "Where an agent of the insurance company is aware of the fact that the insured is not the unconditional owner thereof, when he writes the policy upon the automobile, the insurer is charged with such knowledge and in consequence is deemed to waive the condition in the policy with reference to the ownership of the automobile."

It is our view that appellant's liability properly rests upon the doctrine of estoppel, every necessary element of which is here present. That doctrine was applied to an analogous situation by this Court in the case of Camden Fire Insurance Ass'n v. Wandell, Tex.Civ.App., 195 S.W. 289, 290, where a storm insurance policy stated F. C. Willair was the owner, although the agent was advised of the true ownership of the property. The Court said: "Defendant's agent knew the facts relative to the ownership of the property insured, * * * and, so knowing, accepted the premium and caused the policy to be written containing the clause of ownership, and cannot now set up the fact that the ownership is erroneously stated in the policy to defeat the collection of the insurance. The knowledge of the agent so acting for the company is the knowledge of the company itself, and it is estopped from setting up the clause in which the ownership is erroneously stated as a defense."

These considerations, we feel, completely dispose of all of appellant's contentions. The judgment of the trial court is accordingly affirmed.

Affirmed.